# EXHIBIT B

Case 1:05-cv-07450-CM     Document 43-3     Filed 12/01/2006     Page 1 of 5

 

November 27, 2006

OPTIONS

## ACS Officers Quit After Internal Options Probe

Finding of Backdating
Snags CEO, Finance Chief
As Scandal Fallout Spreads

**By JAMES BANDLER and CHARLES FORELLE**
*November 27, 2006; Page A3*

**DOW JONES REPRINTS**

R   This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit: www.djreprints.com.

• See a sample reprint in PDF format.
• Order a reprint of this article now.

The options-backdating scandal claimed more high-level officials, as the top two executives at a large technology-outsourcing company resigned after an internal investigation concluded they were closely involved in manipulation of stock options at their company.

Mark King, chief executive of **Affiliated Computer Services** Inc., and Warren Edwards, the company's finance chief, stepped down from their posts yesterday but will remain employees until June, the company said. Dallas-based ACS is one of the world's largest providers of back-office computer services to companies and governments, and has 55,000 employees world-wide.

The departures bring to more than 60 the number of corporate officials who have lost their posts as the options scandal continues to grow. It already has sparked one of the largest executive-suite housecleanings in memory, and more officials are likely to lose their jobs in coming weeks.

[1] **MORE ON OPTIONS**
**Options Scorecard:** Companies under scrutiny[2]
**Perfect Payday:** Complete coverage[3]



In releasing the results of its internal probe, ACS said its investigators determined that Messrs. King and Edwards, along with Jeffrey Rich, a former ACS CEO who resigned in September 2005 before the options issues surfaced, intentionally backdated options in a "significant number of cases," increasing their own potential for profit, and prepared memos with phony dates to document the misdated grants.

Messrs. King and Edwards also misled the company's own directors and lawyers, the internal probe concluded, telling them earlier this year that there wasn't any backdating. ACS said that led the company to make an "inaccurate" securities filing in May that denied any serious backdating issues.

The company said it will face a charge of around $51 million to fix the faulty accounting caused by the misdating. The company said it hasn't yet determined how the adjustment will affect past and current financial statements or whether restatements would be required.

In a statement, Mr. King's lawyer, Karen Seymour, said her client voluntarily resigned as CEO

and "cooperated fully" with the investigation. She added: "He acted at all times in good faith and did not engage in any intentional misconduct."

Gary P. Naftalis, a lawyer for Mr. Edwards, said his client cooperated "fully and forthrightly" with the probe and helped find and guide the investigators to relevant documents. Mr. Naftalis noted that Mr. Edwards didn't become chief financial officer until 2001, years after the problems apparently started. "He engaged in no intentional misconduct," Mr. Naftalis said, "and acted in good faith at all times in connection with the company's longstanding and historic options granting practices."

Aitan Goelman, a lawyer for Mr. Rich, said he couldn't comment, because he hadn't seen the probe's findings.

**Corporate Snapshot**
Affiliated Computer Services (ACS)

| | |
|---|---|
| Employees | Over 55,000 world-wide |
| Locations | Headquarters in Dallas<br>413 locations in the U.S.<br>56 sites in 23 other countries |
| Services | Business process outsourcing<br>Information technology outsourcing<br>Systems and integration<br>e-Solutions (Web services) |
| Net Sales in billions | FY 2005* $4.35<br>FY 2004 4.11 |
| Net Income in billions | $0.42<br>0.53 |

*2005 10K filing delayed. Fiscal year ends June 30. Source: the company

According to the company, only Messrs. Rich, King, and Edwards and one other lower-level management employee, whom the company declined to name, knew of the intentional misdating.

ACS named Lynn Blodgett, its chief operating officer, as its new president and CEO. John Rexford, an executive vice president, was named chief financial officer.

More than 130 companies, including titans such as Apple Computer Inc. and UnitedHealth Group Inc., are facing scrutiny from federal prosecutors and regulators examining whether executives improperly backdated stock-option grants. Options typically are designed to give recipients an incentive to see their company's share price rise, by allowing them to purchase shares in the future at the market price on the day the option was granted. Grants that are backdated to more favorable, lower-priced days give recipients an instant, built-in profit. So far, criminal charges have been brought against five ex-executives in two of the cases, with more charges expected.

ACS's internal investigation, which reviewed grants from 1994 to 2005, was conducted by Marc L. Mukasey of Bracewell & Giuliani LLP, a former federal prosecutor in Manhattan. It absolved ACS directors, including ACS's founder and chairman, Darwin Deason, of any responsibility for backdating. Mr. Deason, who himself received two grants with particularly favorable dates, escaped blame even though he was CEO until 1999, and was chairman of the board's compensation committee from 1994 through August 2003. A company spokesman said Mr. Deason never exercised his options.

The probe described a convoluted process for awarding options, which began when Mr. Deason would give a "broad authorization" to the company's CEO for the grants. For grants to senior executives, the probe found, the "historical practice" was for Mr. Deason to call all of the board's compensation-committee members "on or about" the same date that he authorized the grants.

The internal probe found that the company's CEO or finance chief then selected the dates on which the grants would be awarded and prepared the paperwork. In a "significant number of

cases," Messrs. Rich, King or Edwards used "hindsight" to select the grants, often by waiting until after the company's stock price hit bottom and then started to rise again, then picking the lowest price in the period, the probe found. Memos recommending the grants "were intentionally misdated" by one or more of the men "to make it appear as if the memoranda had been created at or about the time of the chosen grant date, when in fact they had been created afterwards," the company said the probe found.

The company said its board, unaware of the backdating, subsequently approved the grants via written consent documents that carried the improper dates.

ACS was among several companies included in a March article in The Wall Street Journal that used statistical analysis to identify executives who likely received backdated grants. The Journal analysis concluded that the odds were one in 300 billion that the pattern of past stock-option grants to Mr. Rich, the company's former CEO, was chosen by chance. At the time, the company denied backdating was the reason for the pattern of fortunate grants, in which Mr. Rich and other top executives received their options dated just ahead of steep rises in ACS's stock price.

In a conference call with analysts in April, Mr. King said preliminary results of an internal probe indicated that there hadn't been "intentional" backdating of stock options to senior executives and described any problems as a "procedural matter" that would get sorted out in a matter of months.

In a May securities filing, the company said it would likely need to take a $32 million charge against its earnings to rectify accounting from misdated grants, but said it "does not believe that any director or officer" of ACS had "engaged in the intentional backdating of stock-option grants in order to achieve a more advantageous exercise price."

In August, the company backtracked, saying its statements in May could no longer be relied upon.

ACS specializes in cutting cost out of corporate back-office functions such as payroll processing and document scanning. ACS also has scores of government clients, handling such chores as electronic record-keeping for county clerks and administration of cities' automated systems that ticket drivers who run red lights. Through the ups and downs of the tech industry, ACS has seen relatively steady success, though its share price has stagnated over the past five years. ACS shares traded Friday at $50.74 on the New York Stock Exchange.

ACS is being investigated by the Securities and Exchange Commission and by the U.S. attorney for the Southern District of New York.

Mr. King joined ACS shortly after it was founded in 1988. He served as chief financial officer from 1995 to 2001, when he was appointed chief operating officer. He was named CEO in 2005 after Mr. Rich's resignation. Mr. Edwards, who joined ACS in 1996, replaced Mr. King as chief financial officer in 2001.

Mr. King received several options with the same unusual dates that plumped up Mr. Rich's paycheck -- including one purportedly granted on the very day the stock touched its lowest closing price of the quarter in July 2002, and another for a split-adjusted 100,000 shares that is dated at the annual low in 1998. Mr. King has so far cashed in 32,000 of the shares from that grant.

Options have represented the bulk of his compensation. All told, from ACS's 2001 fiscal year through last fiscal year, Mr. King has reaped $17.9 million in profits from exercising options --

more than three times his combined salary and bonus over that period, according to Standard & Poor's ExecuComp, which tracks executive pay.

ACS said the improper grants increased the potential profit of Mr. King's options by some $4.5 million -- a sum greater than he has been paid in salary for the past 10 years combined. He will have the exercise prices of his options outstanding adjusted upward by that amount. Mr. Edwards will also have some options repriced, the company said.

**Write to** James Bandler at james.bandler@wsj.com[4] and Charles Forelle at charles.forelle@wsj.com[5]

**URL for this article:**
http://online.wsj.com/article/SB116459402708433235.html

**Hyperlinks in this Article:**
(1) http://online.wsj.com/page/2_1227.html
(2) http://online.wsj.com/public/resources/documents/info-optionsscore06-full.html
(3) http://online.wsj.com/page/2_1227.html
(4) mailto:james.bandler@wsj.com
(5) mailto:charles.forelle@wsj.com

**Copyright 2006 Dow Jones & Company, Inc. All Rights Reserved**

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our **Subscriber Agreement** and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit **www.djreprints.com**.